# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LISA REHKOPF, et al.,       )
                             )
         Plaintiffs,      )
                             )
        v.                    )         1:15CV615
                             )
OCWEN LOAN SERVICING, LLC.,    )
et al.,                             )
                             )
        Defendants.     )

## MEMORANDUM OPINION AND ORDER OF
## UNITED STATES MAGISTRATE JUDGE

This matter is before the Court upon Defendants Ocwen Loan Servicing, LLC (Ocwen), Altisource Solutions, Inc. ("Altisource"), and Wells Fargo Bank N.A. as Trustee for Option One Mortgage Loan Trust 2007-4, Asset-Backed Certificates, Series 2007-4's ("Wells Fargo") motion for partial summary judgment. (Docket Entry 53.) Also before the Court is Defendant Field Connections, LLC's ("Field Connections") motion for partial summary judgment. (Docket Entry 55.) The motions are ripe for disposition. For the reasons stated herein, the Court will grant in part and deny in part Defendants Ocwen, Altisource, and Wells Fargo's motion for partial summary judgment, and grant in part and deny in part Defendant Field Connections' motion for partial summary judgment.[1]

---

[1] By consent of the parties, this matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(c), to conduct all proceedings including a jury or nonjury trial, to order the entry of judgment, and to conduct all post-judgment proceedings therein. (*See* Docket Entry 24.)

# I. BACKGROUND

This action arises from the removal of personal property from a foreclosed home in Otto, North Carolina. (*See generally* Sec. Am. Compl., Docket Entry 67.[2]) Plaintiff Lisa Rehkopf ("Ms. Rehkopf") was the owner of a house located at 351 Sarah Cove Road, Otto, North Carolina. (*Id.* ¶ 11.) She purchased the home in 2005, and in 2007, Ms. Rehkopf obtained a note that was secured by a Deed of Trust against the home. (*Id.* ¶ 14.) Thereafter, the note was assigned to Option One Mortgage Corporation, and Ocwen subsequently became the servicer of the loan. (*Id.* ¶¶ 14-15.) Plaintiffs Eric Slater ("Mr. Slater") and Lance Rehkopf ("Lance") also both resided at the home during the time Ms. Rehkopf owned the home. (*Id.* ¶¶ 16, 24.) Lance is Ms. Rehkopf's son. (*Id.* ¶ 23.) Lance, a United States Marine, moved from the home in 2011, leaving behind some personal belongings (a baseball card collection and some personal equipment). (*Id.* ¶¶ 25-29.)

After living in the home for some years, mortgage payments fell behind after Ms. Rehkopf lost her job and Mr. Slater experienced employment cutbacks. (*Id.* ¶ 30.) In July 2014, Ms. Rehkopf and Mr. Slater moved to Florida, but left most of their personal property in the home in Otto, North Carolina until finding permanent housing in Florida. (*Id.* ¶¶ 32-33.) Ms. Rehkopf notified Ocwen of her move to Florida, and Ocwen thereafter began sending mortgage correspondence to Ms. Rehkopf in Florida. (*Id.* ¶ 34.) Because of failed

---

[2] Defendants' motions for partial summary judgment were filed based upon Plaintiffs' first amended complaint. (*See* Am. Compl., Docket Entry 30.) At the hearing held on September 20, 2016, the undersigned granted Plaintiff's request to file a second amended complaint to add an additional plaintiff in this action. (Minute Entry dated 9/20/2016.) Plaintiffs thereafter filed the second amended complaint. (Docket Entry 67.) The Court will reference the second amended complaint in this memorandum opinion.

payments, the home eventually went into default and Ocwen initiated foreclosure proceedings on or about July 28, 2014. (*Id.* ¶ 36.) The foreclosure sale took place on or about December 3, 2014. (*Id.* ¶ 39.) Defendant Wells Fargo purchased the home at the foreclosure sale. (Report of Foreclosure Sale/Resale, Defs.' Mem., Ex. 4, Docket Entry 56-4.)

Following the sale, Ocwen hired Altisource, a property preservation company, to inspect the property and conduct further proceedings. (Sec. Am. Compl. ¶ 46.) Altisource thereafter issued a work order to Field Connections to inspect the property, and the home was identified as vacant with personal property present. (Mark S. Wierman Aff., Defs.' Mem., Exs. A1 & A2, Docket Entry 54-1 at 4-8.) A separate work order was sent to Field Connections to clean out the property, which took place on December 22, 2014. (Wierman Aff., Defs.' Mem., Ex. A3, Docket Entry 54-1 at 9-10.) Altisource attempted to cancel the order, but Field Connections completed the work order through its vendor, West End Property Inspections, before receiving the cancellation. (*See* Wierman Aff., Defs.' Mem., Ex. A4, Docket Entry 54-1 at 11-12; Work Order, Ex. 2, Docket Entry 67-2.[3]) Some items were removed from the home, and other items remained in the home. (Sec. Am. Compl. ¶ 60, Docket Entry 67; *see also* Inspection Report, Wierman Aff., Defs.' Mem., Ex. A6, Docket Entry 54-1 at 15-17; Altisource Dep. at 14, Docket Entry 54-3.) Altisource subsequently sent out another work order, and the remaining items were removed from the property. (Sec. Am. Compl. ¶ 61, Docket Entry 67.) Defendants never obtained a writ of possession prior to removing the personal property from the home. (*Id.* ¶ 72; Ocwen Am. Answer ¶ 72, Docket Entry 68;

---

[3] Defendant Field Connections submitted supplemental affidavits to clarify the correct work order processed during the clean-out of Plaintiffs' home. (*See* Donna Eaker Suppl. Aff., Docket Entry 72; Joel Wyatt Suppl. Aff., Docket Entry 73.)

Altisource Am. Answer ¶ 72, Docket Entry 69; Wells Fargo Am. Answer ¶ 72, Docket Entry 70; Field Connections Am. Answer ¶ 72, Docket Entry 71.)

Plaintiffs contend that several of the defendants had actual knowledge of Mr. Slater attempting to retrieve Plaintiffs' personal belongings before and after the foreclosure sale. Plaintiffs allege that Mr. Slater contacted Ocwen prior to the foreclosure sale. (Sec. Am. Compl. ¶¶ 40-46., Docket Entry 67.) Mr. Slater also made contact with Alitsource several times to determine the location of the property and how to retrieve it. (Eric Slater Dep. at 21-22, Defs.' Mem., Ex. D, Docket Entry 54-4 at 4-5.) In January 2015, Mr. Slater spoke with an individual named "Carter" whom Mr. Slater believed to be a representative of Altisource. (Sec. Am. Compl. ¶ 47, Docket Entry 67.) That individual told Mr. Slater that the personal property was still in the home and that a writ of possession had not been obtained with regards to the property. (*Id.*) The individual was employed by Hubzu and not Altisource. (Bradford Wilkins Aff. ¶¶ 5-7, Defs.' Mem., Ex. B, Docket Entry 54-2 at 2; Peter Kuclo Dep. at 130, Defs.' Mem. Ex. C, Docket Entry 54-3 at 16.) After becoming concerned about the personal property, Mr. Slater eventually drove to North Carolina in March 2015 only to discover that none of the personal property remained in the home. (Sec. Am. Compl. ¶ 52, Docket Entry 67; Slater Dep. at 22-23, Defs.' Mem., Ex. D, Docket Entry 54-4 at 6-7.)

As a result of Defendants' actions, Plaintiffs seek claims against all Defendants for conversion, negligence, and unfair and deceptive trade practices. Plaintiffs also seek claims against Ocwen and Altisource for negligent misrepresentation. Punitive damages are specifically sought against Ocwen and Altisource. Wells Fargo, Altisource, and Ocwen have

4

filed a motion for partial summary judgment as to Plaintiffs' demand for punitive damages.[4] (Docket Entry 54.) Additionally, Field Connections has moved for partial summary judgment as to Plaintiffs' claim under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA").[5] (Docket Entry 55.) A hearing was held in this matter on September 20, 2016. (Minute Entry dated 9/20/2016.) All parties were present.

## II. DISCUSSION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then affirmatively must demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247-48 (1986).

---

[4] Defendants also sought judgment as a matter of law as to certain items owned by Lance Rehkopf. (Docket Entry 53 at 1.) During a hearing on the motion, the parties agreed to Plaintiffs amending the complaint to add Lance as a plaintiff in this action. Thus, this argument is moot.

[5] Field Connections also moved for summary judgment as to Plaintiffs' conversion and negligence claims to the extent damages are sought for specific items: the baseball card collection, and the stove, refrigerator, dishwasher, and oven. (Docket Entry 55 at 2.) As to the baseball card collection, the amended complaint adding Lance Rehkopf as a plaintiff in this action moots this argument. As to the specific kitchen appliances, Plaintiffs (at the hearing) stipulated that Defendant Field Connections is not responsible for those appliances.

"[A]t the summary judgment stage, the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Similarly, "[c]redibility determinations . . . are jury functions, not those of a judge." *Id.* at 255. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." *Id.*; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted "where a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489 (4th Cir. 2005). However, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. *Id.* at 489-90.

## A. Defendant Field Connections' Motion for Partial Summary Judgment

Field Connections asserts that Plaintiffs have not presented sufficient evidence to support their claim under the UDTPA. More specifically, Field Connections argues that its

6

conduct, viewed in the light most favorable to Plaintiffs, fails to amount to egregious and aggravating circumstances. (Def.'s Mem., Docket Entry 56 at 12-16.) Plaintiffs oppose, asserting that Field Connections' acts are egregious in nature warranting a UDTPA claim. (Pls.' Resp., Docket Entry 60 at 2-3.) Viewed in the light most favorable to Plaintiffs, Field Connections' motion for summary judgment as to Plaintiffs' UDTPA claim should be granted.

N.C. Gen. Stat. § 75-1.1(a) states in part: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). "[A]n action for unfair or deceptive acts or practices is a distinct action apart from fraud, breach of contract, or breach of warranty." *Bernard v. Cent. Carolina Truck Sales,* 68 N.C. App. 228, 232, 314 S.E.2d 582, 585, *rev. denied,* 311 N.C. 751, 321 S.E.2d 126 (1984). To state a prima facie UDTPA claim in North Carolina, Plaintiff must allege that "1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp,* 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (citation omitted)*; see also South Atl. Ltd. P'ship of Tenn., L.P. v. Riese,* 284 F.3d 518, 535 (4th Cir. 2002). Whether an act is deemed unfair or deceptive is "a question of law for the court." *Dalton,* 353 N.C. at 656, 548 S.E.2d at 711 (citation omitted). An act or practice is unfair "if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and is deceptive "if it has the capacity or tendency to deceive." *Ace Chem. Corp v. DSI Transp., Inc.,* 115 N.C App. 237, 247, 446 S.E.2d 100, 106 (1994) (internal citations and quotations omitted). A party must allege and prove egregious or aggravating circumstances to fall within N.C. Gen. Stat. §

75-1.1(a). *Phelps Staffing, LLC v. C.T. Phelps, Inc.*, 740 S.E.2d 923, 928 (N.C. Ct. App. 2013); *Allied Distributors, Inc. v. Latrobe Brewing Co.*, 847 F. Supp. 376, 379 (E.D.N.C. 1993).

Field Connections contend that there is no evidence of any deceptive or unfair act because it never communicated with Plaintiffs regarding the removal of the personal property from the home, and that it was simply following "Altisource's process for removal of personal property in a vacant foreclosed home." (Def.'s Mem., Docket Entry 56 at 13.) As a vendor of Altisource, Field Connections was expected to rely upon the Real Estate Owned Operational Vendor Guide ("Vendor Guide") provided by Altisource, which set forth procedures and instructions for personal property left in vacant homes. (Peter Kuclo Dep. at 40-41, Def.'s Mem., Ex. 7, Docket Entry 56-7 at 3; Ronald Priest Dep. at 22-23, Def.'s Mem., Ex. 9, Docket Entry 56-9 at 3; *see also* Vendor Guide, Def.'s Mem., Ex. 8, Docket Entry 56-8.) Pursuant to the Vendor Guide, a vendor must perform certain procedures when personal property is present, including giving an estimate of the total value of the personal property, and informing Altisource whether the estimation is in excess of the amount requiring a Personal Property Notice ("PPN"). (Vendor Guide, Def.'s Mem., Ex. 8, Docket Entry 56-8 at 12-13.) Once a PPN is issued (for properties in North Carolina), Altiscource would wait ten (10) days for the personal property owners to remove the property. (*Id.* at 14.) If the personal property remained, Altisource would issue an order to the vendor to clean out the property ("REO Order"). (Patricia McTaggart Dep. at 48-49, Def.'s Mem., Ex. 5, Docket Entry 56-5 at 9.) When a REO Order was received, vendors were expected to remove the personal property from the home and place it in the dump. (*Id.* at 44, 51.) The active Vendor Guide in place in December 2014 indicated that legal proceedings were not required prior to

removal of property from a foreclosed home. (Vendor Guide, Def.'s Mem., Ex. 8, Docket Entry 56-8 at 14.) Thus, at the time, Altisource did not obtain writs of possession prior to issuing REO Orders. (Kuclo Dep. at 58-59, Def.'s Mem., Ex. 7, Docket Entry 56-7 at 7.)

In the instant case, Field Connections acted pursuant to the Vendor Guide in removing personal property from Plaintiffs' home. After completing the inspection, Field Connections orchestrated the clean out process upon receiving the REO Order from Altisource. (Joel Wyatt Aff. ¶ 3, Def.'s Mem., Ex. 12, Docket Entry 56-12 at 1; Work Order, Ex. 2, Docket Entry 67-2.) Plaintiffs never communicated with Field Connections (or its contractor vendor), nor was Field Connections aware that Plaintiffs sought recovery of their personal property at this time. (Wyatt Aff. ¶ 7, Def.'s Mem., Ex. 12, Docket Entry 56-12 at 3; Donna Eaker Aff. ¶ 8, Def.'s Mem., Ex. 10, Docket Entry 56-10 at 3; Slater Dep. at 23-24, Def.'s Mem., Ex. 3, Docket Entry 56-3 at 3; Lisa Rehkopf Dep. at 31-32, Def.'s Mem., Ex. 1, Docket Entry 56-1 at 4.) Both Field Connections and West End Property Inspections assumed Altisource had the legal authority to issue the REO Order, and neither were aware of any violation under North Carolina law. (Wyatt Aff. ¶¶ 5-6, Def.'s Mem., Ex. 12, Docket Entry 56-12 at 2-3; Donna Eaker Aff. ¶¶ 7-8, Def.'s Mem., Ex. 10, Docket Entry 56-10 at 3.)

Field Connections' conduct and actions during the removal of Plaintiffs' personal property fail to rise to a level of egregious and aggravating circumstances to support a UDTPA claim. Without any reference to evidence in this case, Plaintiffs simply argue that Field Connections' admission to entering and removing personal property from Plaintiff's home without a writ of possession, and Field Connections' implementation of Altisource's policy in violation of North Carolina law is sufficient to allow the UDTPA claim to proceed. Even

9

assuming *arguendo*, Field Connections' illegal removal of the personal property is sufficient to assert a prima facie case for conversion, such conduct does not *per se* suffice for a UDTPA claim. *Hancock v. Renshaw*, 421 B.R. 738, 743 (M.D.N.C. 2009) ("[C]onversion in and of itself does not necessarily constitute an unfair or deceptive act or practice. Rather, there must be sufficient aggravating or egregious circumstances."); *see also Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co.* 192 N.C. App. 74, 83, 665 S.E.2d 478, 487 (2008) ("[A]cts of conversion *may* constitute unfair and deceptive trade practices[.]") (citing *Love v. Pressley,* 34 N.C. App. 503, 239 S.E.2d 574 (1977)(emphasis added)); *Allied Distributors,* 847 F. Supp. at 380 (noting that "[t]he North Carolina legislature must have intended that substantial aggravating circumstances be present before any practice is deemed unfair under [this section], since it provided that any damages suffered by the victim are to be trebled.") (citations omitted).

Plaintiffs argue that the instant case is most akin to *Pressley*; however, the Court disagrees. In *Pressley*, the defendant landlord rented a housing unit to the plaintiffs. 34 N.C. App. at 505, 239 S.E.2d at 576. Several days after moving in, the plaintiffs informed the defendant's agent that the plaintiffs were moving out of the unit. *Id.* at 505, 239 S.E.2d at 576. The plaintiffs returned to the property two days later to discover that their personal property was missing. *Id.* at 505, 239 S.E.2d at 576. The plaintiffs attempted to contact the defendant landlord, but he failed to respond. *Id.* at 505, 239 S.E.2d at 576. The jury concluded that the defendant landlord trespassed upon the property rented to the plaintiffs and converted the personal property in the unit. *Id.* at 516, 239 S.E.2d at 583. The parties stipulated as to the defendant landlord's failure to initiate eviction of the plaintiffs through judicial proceedings.

*Id.* at 516-17, 239 S.E.2d at 583. The jury also implicitly found that the defendant landlord "refused to return the property upon demand." *Id.* at 516, 239 S.E.2d at 583. The court found that such acts by the defendant landlord constituted unfair and deceptive trade practices, thereby warranting an award of treble damages to the plaintiffs. *Id.* at 516, 239 S.E.2d at 583.

In the instant case, Field Connections actions were not nearly as egregious as the defendant landlord in *Pressley*. Field Connections was acting pursuant to Altisource's policy in arranging the removal of Plaintiffs' personal property from the home, and Field Connections was unaware of North Carolina law requiring a writ of possession prior to entering the home. Unlike the defendant landlord in *Pressley*, Field Connections was unaware that Plaintiffs sought their personal property, and never engaged in any communication with Plaintiffs about the property. Thus, there was never any refusal to cooperate with Plaintiffs. Because Field Connections' conduct "do not establish the additional egregious, immoral, oppressive, unscrupulous, or substantially injurious acts needed to impose the heightened penalty of unfair and deceptive trade practices[,]" its motion for partial summary as to Plaintiffs' UDTPA claim will be granted. *Bartlett*, 192 N.C. App. at 83, 665 S.E.2d at 487; *see also Cardinal Health 414, Inc. v. Schwarz Properties, Inc.*, No. 1:06CV570, 2008 WL 5216189, at *14 (M.D.N.C. Dec. 11, 2008) (although defendants administered a public auction sale of plaintiff's property without providing a statutory notice, the Court held that such conduct was not sufficient to support a UDTPA claim as it "st[ood] in stark contrast to the facts in *Love*" and that defendants, among other things, believed their actions were legal).[6]

---

[6] At the hearing, Plaintiffs relied upon the holding in *Belk, Inc. v. Meyer Corp., U.S.* to support their argument that Field Connections' good faith and lack of intent to deceive Plaintiffs were not relevant.

## B. Defendants Ocwen, Altisource, and Wells Fargo's Motion for Partial Summary Judgment

Defendants Ocwen, Altisource and Wells Fargo move for partial summary judgment as to Plaintiffs' claim for punitive damages.[7] (Docket Entry 53.) Defendants assert that Plaintiffs' claim for punitive damages arising from the alleged negligent misrepresentation fails as a matter of law. (Defs.' Mem., Docket Entry 54 at 9-10.) Defendants also argue that Plaintiffs' claim for punitive damages based upon the alleged willful and wonton conduct of Defendants fail as a matter of law. (*Id.* at 10-18.) Plaintiffs assert that Defendants' conduct did rise to a level of willful and wonton conduct such that their claim for punitive damages should proceed. (Pls.' Resp., Docket Entry 59.)

### 1. Punitive Damages for the Alleged Conversion of Property Without Writ of Possession

Defendants Altisource, Ocwen and Wells Fargo contend that Plaintiffs' punitive damages claim for willfully violating North Carolina law by not obtaining a writ of possession before removing Plaintiffs' property does not survive Defendants' motion for summary judgment. (Defs.' Mem., Docket Entry 54 at 10-18.) Plaintiffs contend that Defendants' acts were willful and wanton because they purposefully violated the law, and "they manifested a

---

679 F.3d 146 (4th Cir. 2012), *as amended* (May 9, 2012). Indeed, the Fourth Circuit noted that "the intent of the actor and good faith are irrelevant." *Id.* at 164 (citations omitted). In that action involving patent infringement, the Court recognized a change in the law whereby "a violation of state-registered trademark law [is] a per se violation [N.C. Gen. Stat. § 75-1.1], and thus subject to treble damages." *Id.* at 167. The Court further held that "the inference of an intent to deceive" was evident based upon the deceptively similar cookware designs of the patent owner and former customer. *Id.* at 168. In the instant case, Plaintiffs fail to present sufficient evidence of deceptive conduct on behalf of Field Connections, nor is there a logical bridge between *Belk* and the facts of this case.

[7] In its motion, Defendants also moved for summary judgment as to Plaintiffs' conversion claim with regard to certain personal property owned by Lance Rehkopf. (Docket Entry 54 at 8-9.) Based upon the filing of the second amended complaint, Lance Rehkopf has been added as a plaintiff in this action. Thus, this argument is moot.

reckless indifference to the right of the homeowners whose property was being wrongfully destroyed." (Pls.' Resp., Docket Entry 59 at 5.) Punitive damages are awarded "to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C. Gen. Stat. § 1D–1. Pursuant to North Carolina law, "[p]unitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that . . . [an] aggravating factor[] was present and was related to the injury for which compensatory damages were awarded." *Schenk v. HNA Holdings, Inc.*, 170 N.C. App. 555, 559, 613 S.E.2d 503, 507 (2005). The following are considered aggravating factors: (1) fraud, (2) malice or, (3) willful or wanton conduct. N.C. Gen. Stat. § 1D-15(a). "'Willful or wanton conduct' means the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm. 'Willful or wanton conduct' means more than gross negligence.'" N.C. Gen. Stat. § 1D-5(7). The aggravating factor must be established by clear and convincing evidence. N.C. Gen. Stat. § 1D-15(b).

Here, Plaintiffs' argument as to willful or wanton conduct primarily surrounds the issue of Defendant's knowledge with the law requiring a writ of possession before removing personal property from a vacant foreclosed home. (Pls.' Resp., Docket Entry 59 at 5-7.) Pursuant to North Carolina General Statute 45-21.29,

> An order for possession issued pursuant to G.S. 45-21.29(k) shall be directed to the sheriff and shall authorize the sheriff to remove all occupants and their personal property from the premises and to put the purchaser in possession, and shall be executed in accordance with the procedure for executing a writ or order for possession in a summary ejectment proceeding under G.S. 42-36.2.

13

N.C. Gen. Stat. § 45-21.29(l). Plaintiffs contend that, based upon the evidence, a jury could infer that Defendants "established its policy of violating the law by illegally entering unoccupied houses because it saved the company money." (Pls.' Resp., Docket Entry 59 at 7.)

The Court concludes that Plaintiffs have presented sufficient evidence to create a genuine issue of material fact as to whether Defendants' conduct rises to a level of willful or wanton conduct necessary to succeed on a claim for punitive damages. During a deposition, Mr. Kuclo stated that the understanding was that Altisource was required to obtain to writ of possession to remove the personal property. (Kuclo Dep. at 59, Defs.' Mem. Ex. C, Docket Entry 54-3 at 7.) Mr. Kuclo further stated that Altisource's polices were "a collaborative effort between multiple business units, including compliance and legal. At that time, [the] decision was made to proceed in the way . . . [Altisource] did. [Altisource has] since reviewed the processes and have made modifications to align with the requirements of North Carolina." (Id. at 78-79.) Mr. Kuclo also stated that he suspected that Altisource has more than ten attorneys in its legal department. (Id. at 78.) Furthermore, Ronald Priest, an Altisource training manager, stated that documents in the Vendor Guide "are generally reviewed on an annual basis by the compliance team." (Ronald Priest Dep. at 30, Defs.' Mem., Ex. G, Docket Entry 54-7 at 4.) Lastly, Mr. Kuclo made the following statements during his deposition:

> Q. But isn't it more expensive to obtain a writ of possession for a property that's vacant and contains personal property than not to obtain that writ of possession?
> MR. GRIFFIN: Object to the form.
> THE WITNESS: Yes. If there's no writ of possession or eviction action incurred, there's no expense.
> Q. (By Mr. White) And isn't it true that this policy was put in place for the purpose of reducing costs in dealing with properties that were vacant?

MR. GRIFFIN: Object to the form.

 THE WITNESS: No.

Q. (By Mr. White) Why was the policy put in place?

A. Which policy?

Q. The policy of not obtaining writs of possession for vacant personal -- vacant property with personal property in North Carolina.

MR. GRIFFIN: Object to the form.

THE WITNESS: During the exercise of developing the personal property matrix, we've discussed [and] it was determined that we did not need a writ of possession in that particular state.

Q. (By Mr. White) And that was because it cost less money?

MR. GRIFFIN: Object to the form.

THE WITNESS: I don't know. I was not -- I was not part of the decision-making process at that time.

　　. . . .

Q. How much does it cost Altisource to obtain an order of possession from Clerk of Superior Court in North Carolina?

MR. GRIFFIN: Object to the form.

THE WITNESS: I don't know the exact number. A few hundred dollars.

(Kuclo Dep. at 83-84, Pls.'s Resp., Docket Entry 59-1 at 5-6.)[8]

---

[8] Defendants object to a portion of Mr. Kuclo's deposition regarding his response to a question about whether Altisource decided not to obtain writs of possession to save cost. (Docket Entry 63 at 2.) Mr. Kuclo stated "I don't know. I was not -- I was not part of the decision-making process at that time." (Kuclo Dep. at 84, Pls.'s Resp., Docket Entry 59-1 at 6.) Defendants contend that Plaintiffs already asked Mr. Kuclo the same question before hand and Mr. Kuclo answered "No." (*Id.* at 83; *see also* Docket Entry 63 at 2.) The Court concludes that Plaintiffs' line of questioning was not inappropriate. Plaintiffs inquired a second time if saving money was Altisource's reasoning behind its policy after Mr. Kuclo stated that it was determined that a writ of possession was not needed in North Carolina during the development of a personal property matrix. (Kuclo Dep. at 84, Pls.'s Resp., Docket Entry 59-1 at 6.) This question did not subject Defendants to unfair prejudice, confuse the issues, cause undue delay, waste time, or needlessly present cumulative evidence. Fed. R. Evid. 403. Nor does the Court find that the question was asked in bad faith or to unreasonably annoy, embarrass or oppress the witness. Fed. R. Civ. P. 30(d)(3)(A). Defendants also contend that Plaintiffs' question assumes facts not in evidence. (Docket Entry 63 at 3.) "This trial objection has no place in discovery practice and is overruled." *Baker v. Cty. of Missaukee*, No. 1:09-CV-1059, 2013 WL 5786899, at *7 (W.D. Mich. Oct. 28, 2013); *see also Garcia v. Clark*, No. 1:10-CV-00447-LJO, 2012 WL 1232315, at *2 (E.D. Cal. Apr. 12, 2012) ("Assuming facts not in evidence may be the basis for an objection during trial or some other evidentiary hearing. This however, is discovery.") Lastly, Defendants contend that Plaintiffs' opposition brief omitted a portion of Mr. Kuclo's answer to the questions regarding Altisource's cost-saving methods. (Docket Entry 63 at 3.) However, Plaintiffs' attached the pertinent portion of Mr. Kuclo's deposition to their response. (Kuclo Dep. at 83-84, Pls.'s Resp., Docket Entry 59-1 at 5-6.) Thus, Defendants' objection is overruled. The Court has considered the content of Defendants' remaining objections (Docket Entry 63 at 1-2). The Court's ruling on Defendants'

Based upon the evidence, there is a genuine issue of material fact as to whether Defendants conduct was willful or wanton. The facts here are akin to *Richardson v. Bank of Am.*, 182 N.C. App. 531, 643 S.E.2d 410 (2007). In *Richardson*, a class action suit was filed against "Bank of America, N.A. (Bank of America) and its wholly-owned subsidiary, Nations Credit Financial Services Corporation (Nations Credit)." *Id.* at 534–35, 643 S.E.2d at 413. Defendants sold single-premium credit insurance ("SPCI") to some plaintiffs which had loans greater than fifteen years or more. *Id.* at 536, 643 S.E.2d at 414. "[T]he SPCI sold to Plaintiffs having loans greater than fifteen years was not approved by the Department of Insurance." *Id.* at 536, 643 S.E.2d at 414. The plaintiffs "alleged claims for unfair and deceptive trade practices (UDTP) under N.C. Gen. Stat. § 75-1.1, unjust enrichment, breach of the duty of good faith and fair dealing, and punitive damages." *Id.* at 535, 643 S.E.2d at 413.

The trial court found that the "Plaintiffs with loans greater than fifteen years were entitled to a jury trial regarding punitive damages on their claims for breach of the duty of good faith and fair dealing." *Id.* at 558, 643 S.E.2d at 427. The trial court considered the following facts to determine whether the plaintiffs' punitive damage claimed survived summary judgment:

> [1.] NationsCredit was a wholly owned subsidiary of a sophisticated nationwide bank;
>
> [2.] NationsCredit had a legal department available to give advice;

___

motion for partial summary judgment is not based upon either of these objections. The Court construes the content at issue as mere arguments.

[3.] There is no affidavit or deposition testimony from anyone working for or with [NationsCredit] ever considered whether the sale of this SPCI was legal or conducted an investigation into the legality of its insurance sales practices on these kinds of loans;

[4.] [NationsCredit] has offered no direct evidence that it believed or had a rational basis for believing it was acting legally when it illegally sold these insurance policies over a two year period from May 1998 through June 2000;

[5.] The lawfulness vs. unlawfulness issue is not a complicated factual question; it is a matter of reading the applicable statutes. Anyone reading the statute, particularly someone in the insurance field, would at the least recognize the problem with selling this insurance, and there is no evidence before the Court that the arguments now made by defense counsel in court in defense of selling this insurance were considered and evaluated before making the decision to sell the insurance;

[6.] The sale and financing of SPCI on mortgage loans has been controversial for a number of years and is highly regulated by the states;
[7.] SPCI is expensive insurance that meets the needs of very few if any customers;

[8.] NationsCredit never investigated offering other kinds of insurance because profits would have been lower; and

[9.] The primary motivation behind the sale of SPCI was the large profits available.

*Id.* at 559–60, 643 S.E.2d at 428. The trial court further determined that Nations Credit

failed to investigate or take any steps to determine whether the sale of this controversial and highly regulated insurance was legal and decided to sell the insurance solely based on the high profits available and without regard to the financial needs or legal rights of its customers, and to the detriment of their property rights in the homes securing these mortgages.

*Id.* at 560, 643 S.E.2d at 428. The Court of Appeals agreed. *Id.* at 560; 643 S.E.2d at 429.

Similar to *Richardson*, Altisource has a compliance department and a legal department

with at least 10 attorneys. (Kuclo Dep. at 78, Defs.' Mem., Ex. C, Docket Entry 54-3 at 9.)

Based on the evidence presented, it can be inferred that no one from Altisource considered

whether a writ of possession was necessary prior to removing personal property from the home. It was industry knowledge that sheriffs were aggressive with respect to threatening the arrest of those that entered properties without a writ of possession. (Kuclo Dep. at 61, Def.s' Mem., Ex. 7, Docket Entry 56-7 at 7.) Thus, there may have be an awareness that Altisouce's behavior was controversial. In addition, it is unclear whether the primary motivation behind Altisource's failure to obtain writs of possession was to save money. (Kuclo Dep. at 83-84, Pls.'s Resp., Docket Entry 59-1 at 5-6.) The Court recognizes that there is a difference between implementing a policy to make money, as found in *Richardson*, and implementing one to cut cost, which may be present in this case. These facts highlight several similarities between the case at hand and *Richardson*.

Furthermore, Defendants assert that their policies are reviewed annually. (Priest Dep. at 30, Defs.' Mem., Ex. G, Docket Entry 54-7 at 4.) The Court finds this troubling because North Carolina law has required a writ of possession to remove property since at least 1993. N.C. Gen. Stat. § 45-21.29 (1993). The record does not reveal how long Altisource has been doing business but the evidence suggests that their policies were reviewed yearly. Nevertheless, Defendants still maintain that no one from Altisource researched N.C. Gen. Stat. § 45-21.29.

Defendants cite several cases to support their position that their conduct does not rise to the level of willful or wanton behavior. These cases are distinguishable because the aggregating factor needed to raise the defendants' negligent conduct to a willful or wanton level is missing in each case. *See Strawbridge v. Sugar Mountain Resort, Inc.*, 320 F. Supp. 2d 425, 436 (W.D.N.C.), *on reconsideration in part*, 328 F. Supp. 2d 610 (W.D.N.C. 2004) (reasoning that

the record did not support the plaintiff's claim that the defendants "deliberately misstated the law in order to prevent patrons from bringing law suits [against the ski resort]. Furthermore, the Court finds that . . . failing to mark bare spots after hearing reports that they . . . caus[ed] injuries and exaggerate[d] the amount of snow on the mountain, does not rise to the level of willfulness and wantonness"); *Collins v. St. George Physical Therapy*, 141 N.C. App. 82, 88, 539 S.E.2d 356, 361 (2000) (concluding that while the defendant failed to properly install an exercise machine, "the evidence . . . indicate[d] that [the] defendant may have been negligent in deviating from customary standards in caring for the Universal machine" but this behavior did "not rise to the level of willful or wanton conduct"); *Butt v. Goforth Properties, Inc.*, 95 N.C. App. 615, 616, 383 S.E.2d 387, 387-88 (1989) (finding that the defendant's failure to adequately secure the trailer before unhitching it from the truck causing it to roll downhill and crash into the plaintiff's bedroom was not willful or wanton conduct). Here however, Plaintiffs have "produce[d] a forecast of evidence demonstrating that [they] will be able to make out at least a *prima facie* case at trial." *Smith v. Am. Honda Motor Co.*, No. 1:14-CV-943, 2016 WL 1312541, at *3 (M.D.N.C. Apr. 4, 2016) (internal quotations and citations omitted). Thus, summary judge is denied against Altisource.[9]

---

[9] Defendants assert that there is no evidence of participation by Ocwen and Wells Fargo giving rise to the claim for punitive damages. (Defs.' Mem., Docket Entry 54 at 15.) Plaintiffs only address Defendants' punitive damages arguments regarding Altisource in their response. (*See generally* Pls.' Resp., Docket Entry 59.) The Court finds that Plaintiffs have failed to produced evidence to create a genuine issue of material fact as to whether Ocwen or Wells Fargo are liable for punitive damages. Thus, Plaintiffs' punitive damages claim only survives against Altisource.

2. <u>Punitive Damages for Negligent Misrepresentation</u>

Defendants Altisource, Ocwen and Wells Fargo contend that Plaintiffs fail to present sufficient evidence to establish that its' officers condoned or participated in any conduct giving rise to punitive damages. (Defs.' Mem., Docket entry 54 at 9-10.) Plaintiffs contend that Defendants are liable for punitive damages for incorrectly stating "that Defendants would not attempt to remove Plaintiffs' Personal Property until after they had obtained and served a writ of possession, and that Plaintiffs would be able to arrange a time with Defendants to move the Personal Property." (Sec. Am. Compl. ¶ 88, Docket Entry 67.) In their opposition brief, Plaintiffs rely upon Altisource's alleged willful and wanton conduct, and contends that the determination as to whether Carl Lopez is an employee of Altisource is "merely a contention, not an undisputed fact." (Pls.' Mem., Docket Entry 59 at 8.)

According to North Carolina law, "in order to award punitive damages against a corporation based on vicarious liability, 'the officers, directors, or managers of the corporation [must have] participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages.'" *Everhart v. O'Charley's Inc.*, 200 N.C. App. 142, 152, 683 S.E.2d 728, 737 (2009) (citing N.C. Gen. Stat. § 1D–15(c)). Here, the evidence indicates that the person who assured Mr. Slater that his property was safe did not work for Altisource or any other Defendant. According to Bradford Wilkins, Altisource's Vice President of Human Resources, Mr. Slater spoke to "Carl Lopez, regarding the location of the property at issue in this litigation." (Wilkins Aff. ¶ 5, Defs.' Mem., Ex. B, Docket Entry 54-2 at 2.) Mr. Wilkins also stated that Carl Lopez is a representative of Hubzu which is not a party to this case. (*Id.* ¶ 6.) Additionally, in an email chain between Altisource employees, Lana Delos Reyes, a manager,

indicates that Carl Lopez is "not from the PPI CC team but he is from Hubzu." (Altisource Email Chain, Defs.' Mem., Ex. A, Docket Entry 54-1 at 14.) Lastly, Peter Kuclo, another Altisource representative, stated that he is not aware of the person that Mr. Slater spoke to that assured Mr. Slater that he would be able to move his property, or whether the person was a call center associate for Hubzu. (Kuclo Dep. at 130, Defs.' Mem. Ex. C, Docket Entry 54-3 at 16.) Plaintiffs have not provided any evidence to refute these statements.[10] Thus, punitive damages cannot be assessed against Altisource for the alleged misrepresentations because none of its officers, directors, or managers participated in or condoned the alleged misrepresentations made by Hubzu's representatives.[11] *Estrada v. Consol. Util. Servs., Inc.*, No. 5:10-CV-161-RLV, 2011 WL 2174467, at *3 (W.D.N.C. June 2, 2011) (denying the plaintiff's claim for punitive damages because "[t]he complaint d[id] not point to any specific officers, directors, or managers taking part in or condoning any willful or wanton conduct"); *Phillips v. Rest. Mgmt. of Carolina, L.P.*, 146 N.C. App. 203, 216, 552 S.E.2d 686, 694–95 (2001) (finding that the plaintiff "failed to forecast any credible evidence that any officer, director, or manager of defendant Restaurant Management participated in or condoned any fraudulent, malicious, or willful or wanton act that might provide the basis for punitive damages").

---

[10] Even assuming *arguendo*, that Altisource and Hubzu have something analogous to an agency relationship, the email chain does not show that Reyes condoned any statements made by Carl Lopez to Mr. Slater, nor does it indicate participation in any willful or wanton conduct.

[11] The Court notes that Plaintiffs' only addressed whether their claim for punitive damages for misrepresentation survives as to Altisource. (Pls.' Resp., Docket Entry 59 at 8.) However, in the their second amended complaint, Plaintiffs state that the Court should "[a]ward Plaintiffs punitive damages for Defendants Ocwen and Altisource's Negligent Misrepresentations and their willful and wanton conduct." (Sec. Am. Compl. ¶ 102, Docket Entry 67.) The Court finds that Plaintiffs have failed to produce evidence to create a genuine issue of material fact as to whether Ocwen is liable for punitive damages for misrepresentation.

## III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that:

Defendant Field Connections' Motion for Partial Summary Judgment (Docket Entry 55) is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** as to Plaintiffs' claims of relief for conversion and negligence to the extent those claims seek recovery of damages against Field Connections for certain kitchen appliances allegedly lost or destroyed. **IT IS FURTHER ORDERED** that the motion is **GRANTED** as to Plaintiffs' claim for unfair and deceptive trade practices against Field Connections. The motion is **DENIED** as to Plaintiffs' claims of relief for conversion and negligence to the extent those claims seek recovery of damages against Field Connections for the baseball collection allegedly lost or destroyed.

**IT IS FURTHER ORDERED** that Defendants Altisource, Ocwen and Well Fargo's Motion for Partial Summary Judgment (Docket Entry 53) is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** as to Plaintiffs' claim for punitive damages arising from the alleged negligent misrepresentation claim. It is **GRANTED** as to Defendants Ocwen and Wells Fargo for Plaintiffs' claim for punitive damages arising from their alleged willful and wanton conduct. The motion is **DENIED** as to Defendant Altisource for Plaintiffs' claim for punitive damages arising from its alleged willful and wanton conduct. Furthermore, the motion is **DENIED** as to Plaintiffs' claim of relief for conversion against Altisource, Ocwen and Wells Fargo for the locker, camping equipment and baseball card collection.

Joe L. Webster
United States Magistrate Judge

November 2, 2016
Durham, North Carolina