UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| LISA REHKOPF AND ERIC SLATER,<br><br>Plaintiffs,<br><br>vs.<br><br>OCWEN LOAN SERVICING, LLC, ALTISOURCE SOLUTIONS, INC. AND WELLS FARGO BANK N.A. AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2007-4, ASSET-BACKED CERTIFICATES, SERIES 2007-4, FIELD SERVICES CONNECTIONS, LLC<br><br>Defendants. | Case No.: 1:15-cv-00615 |

**DEFENDANTS OCWEN LOAN SERVICING, LLC, ALTISOURCE SOLUTIONS, INC. AND WELLS FARGO BANK N.A. AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2007-4, ASSET-BACKED CERTIFICATES, SERIES 2007-4 TRIAL BRIEF**

Pursuant to Local Rule 40.1(c), Defendants Ocwen Loan Servicing, LLC ("Ocwen"), Altisource Solutions, Inc. ("Altisource"), and Wells Fargo Bank N.A. as Trustee for Option One Mortgage Loan Trust 2007-4, Asset-Backed Certificates, Series 2007-4 ("Wells Fargo") hereby submit this trial brief.

A.   **INTRODUCTION AND NATURE OF THE CASE BEFORE THE COURT**

Following the Plaintiffs' default on their mortgage for failing to make the monthly payments due, the substitute trustee initiated a non-judicial foreclosure action in accordance with North Carolina law. Following the judgment of foreclosure and sale, and in accordance with the Altisource property preservation policy in effect at the time of

1

the sale, its vendor, Defendant Field Connections, LLC ("Field Connections"), inspected the property. After reporting that the property was vacant, and again in accordance with the Altisource policy in effect at the time of the sale, Field Connections was instructed to clean out any personal property and debris remaining in and around the home in order to prepare the property for marketing and sale. Altisource attempted to rescind the order, but the rescission order was issued too late. In response to several telephone calls by Plaintiff Eric Slater, Altisource investigated its action and Field Connections' action leading up to the clean out and concluded that those actions complied with the policy in effect at the time, which it thought to be in compliance with North Carolina law, and explained its position to Mr. Slater.

Shortly thereafter, Plaintiffs filed the present action asserting causes of action for conversion, negligence, negligent misrepresentation and violations of the North Carolina Unfair and Deceptive Trade Practices Act against Defendants Ocwen, Altisource, Wells Fargo, and Field Connections for entering the Plaintiffs' home following the foreclosure sale and disposing of the Plaintiffs' personal property without first obtaining a writ of possession. Plaintiffs seek the recovery of actual, treble, and punitive damages, asserting that the Defendants' actions constitute willful and wanton conduct. Plaintiffs have limited evidence to support their claimed actual damages, and Defendants will show that neither punitive nor treble damages are warranted in this case.

## B. RELEVANT FACTS

Plaintiff Lisa Rehkopf purchased 351 Sarah Cove Road, Otto, North Carolina (the "home"), and in or about 2007, she obtained a note from Option One Mortgage

2

Corporation secured by a Deed of Trust against the home. (Second Amended Complaint (Docket Entry 67), ¶ 14.) Ocwen became the mortgage servicer for the loan on March 1, 2013. (*Id.*, ¶ 15.)

In 2014, Ms. Rehkopf fell behind in making the mortgage payments and eventually went into default and foreclosure. (Docket Entry 75, 2.) Plaintiffs Lisa Rehkopf and Eric Slater moved from the home in July of 2014 to Florida, but left personal property in the home. (Docket Entry 67, ¶ 32.) The foreclosure sale occurred on December 3, 2014. (*Id.*, ¶ 39.) The Substitute Trustee's deed was recorded on January 26, 2015. (Doc. 30-1.)

Following the foreclosure sale, Altisource issued a work order to Field Connections to conduct an initial inspection of the property on December 5, 2014, and Field Connections identified the home as vacant and containing personal property. *(See* Docket Entry 54-1, at 4-8.) Altisource issued a separate work order to Field Connections to clean out the property, which occurred on December 22, 2014. (Docket Entry 54-1, at 9-10.) However, in the interim, Altisource attempted to cancel the order. (Docket Entry 54-1, at 11-12; Work Order, Exh. 2, Docket Entry 67-2.) Unfortunately, the order was carried out prior to Altisource's cancellation of the order. (Doc. 30-2; Doc. 30-3.)

In January 2015, an employee working for Hubzu, a business unit not involved in property preservation or evictions, indicated to Eric Slater by telephone that the eviction process had not occurred and that the personal property remained in the home. (Ex. 39 to Deposition of Altisource March 22, 2016, Docket Entry 54-3.)

Mr. Slater contacted Altisource multiple times to determine whether his property was in the house and to coordinate a time to pick up the property. (March 29, 2016 Dep. of Eric Slater 21:4-22 Docket Entry 54-4.) In or around March 2015, Mr. Slater drove to the home and upon arrival, found that the home was empty and that all the personal property items were missing. (*Id.* at 21:4-22; 21:25-22:3; 26:13-16.)

C. **ANALYSIS OF THE ISSUES**

    1. Conversion and Negligence

Defendants do not dispute that plaintiffs' personal property was removed from the home and disposed of following the foreclosure sale. Defendants also do not dispute that at the time of the clean out in December 2014, Altisource's policies and procedures for conducting clean outs of foreclosed homes did not require securing a writ of possession. Defendants also do not dispute that North Carolina law required that a person secure a writ of possession prior to removing personal property from a home following a foreclosure sale.

Defendants dispute that the Plaintiffs' alleged damages are solely the result of Defendants' actions. The inspections conducted by Defendants' property preservation vendors led them to believe that the home and the personal property was abandoned. By placing a personal property notice on the home and delaying the clean out until the redemption period expired, Defendant Altisource thought its actions complied with North Carolina law. Defendant Altisource avers that it did not understand that North Carolina law required a writ of possession prior to disposing of personal property, but now understands that such a writ is required and it has changed its policies accordingly. Further, there is a

4

lack of evidence that all of the items alleged by Plaintiffs to have been at the property at the time of the clean out were actually there and prior inspections show a broken door window, which suggests that some property may have been stolen prior to the clean out.

    2.    <u>Negligent Misrepresentation</u>

A negligent misrepresentation "occurs when in the course of a business or other transaction in which the individual has a pecuniary interest, he or she supplies false information for the guidance of others in a business transaction without exercising reasonable care in obtaining or communicating the information." <u>Fulton v. Vickery</u>, 73 N.C. App. 382, 326 S.E.2d 354, 358 <u>rev</u>. <u>denied</u>, 313 N.C. 599, 332 S.E.2d 178 (1985). The false representation generally cannot be to a future occurrence because the "determination of truth or falsity must be made at the time of the representation." <u>Childress v. Nordman</u>, 238 N.C. 708, 78 S.E.2d 757 (1953). <u>See</u> <u>also</u> <u>Rhodes, Inc. v. Morrow</u>, 937 F.Supp. 1202, 1215 (M.D.N.C. 1996).

Plaintiffs now base the negligent misrepresentation on the allegation that Carl Lopez, an associate with the Hubzu business unit, informed plaintiff Eric Slater that someone would contact him within twenty four to forty eight hours, and that no one contacted Mr. Slater. Mr. Lopez did not work for Altisource Solutions, Inc. and had no involvement or responsibilities with property preservation and inspections. (Docket Entry 54-2.) As a result, his promise that someone would contact Mr. Slater cannot form the basis of a negligent misrepresentation claim. <u>Rhodes, Inc.</u>, 937 F.Supp. at 1215 (granting summary judgment to defendant on claim for negligent misrepresentation where alleged false representation related to a future occurrence).

5

### 3. Willful or Wanton Conduct to Support a Punitive Damages Award.

The only aggravating factor at issue in this case is willful and wanton conduct of the Defendant Altisource. In order to recover punitive damages, the Plaintiffs must establish willful or wanton conduct was present and was related to an injury for which compensatory damages were awarded. See N.C. GEN. STAT. § 1D-15(a); Springs v. City of Charlotte, 222 N.C. App. 132, 136, 730 S.E.2d 803, 805 (2012). A plaintiff must prove this claim by clear and convincing evidence. Cockerham-Ellerbee v. Town of Jonesville, 190 N.C. App. 150, 151, 660 S.E.2d 178, 179 (2008). "Willful or wanton conduct" means the "conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. GEN. STAT. § 1D–5(7). It means more than "gross negligence." Id.[1]

Although Altisource conceded that its policy failed to include securing a writ of possession prior to entering a foreclosed and vacant home with abandoned personal property prior to disposing the personal property remaining behind, the testimony will show that this was not a case of deliberate and willful misconduct. The testimony will show that Altisource developed the policy after review by multiple internal teams, including compliance. The testimony will also show Altisource expects its vendors to educate themselves on federal, state and local laws regarding the vendors' services, and

---

[1] Negligence, a failure to use due care, be it slight or extreme, connotes inadvertence. Wantonness, on the other hand, connotes *intentional wrongdoing*. Where malicious or willful injury is not involved, wanton conduct must be alleged and shown to warrant the recovery of punitive damages. Conduct is wanton when conducted in *conscious and intentional disregard* of and indifference to the rights and safety of others. Hinson v. Dawson, 244 N.C. 23, 28, 92 S.E.2d 393, 396 (1956) (emphasis added).

that Altisource expects its vendors to inform it if the vendor believed the work order violates local laws or regulations. The testimony will show that Altisource relies on its vendors to comply with local laws. In this case, Altisource even made an attempt to cancel the original clean out order.

There is no evidence of conscious and intentional wrongdoing or disregard. The testimony will show that Altisource established policies intended to ensure compliance with local eviction laws. Moreover, in light of Altisource's knowledge at the time, i.e., that it followed the policies it thought complied with local law, how can Altisource be held to know or reasonably likely to know that its policy might result in damage or harm? The testimony will show that when Altisource investigated Mr. Slater's inquiry, it determined that it had followed what it thought were the correct procedures. Contrary to Plaintiffs' position, the testimony will also show that Altisource's policies thought to comply with local law were not implemented to avoid costs associated with the eviction process.

Altisource concedes that it did not understand that North Carolina law required a writ of possession prior to disposing of personal property, but now understands that such a writ is required and it has changed its policies accordingly.

4. <u>Damages</u>

The testimony will show that the Plaintiffs left the home unoccupied from July 2014 through March 2015. There was no one watching the property for them and the plaintiffs made no visit the home from July 2014 to March 2015. Plaintiffs failed to maintain homeowners' insurance on the property following the decision to stop making mortgage payments and as a result, the personal property was not insured. During inspections of the

home conducted by Altisource's vendors, the vendor noted that the back door window had been smashed in September 2014 which could have resulted in a theft of some of the personal property. An Ocwen employee recommended to Mr. Slater in November 2014 that he retrieve his personal belongings as soon as possible. It is reckless to leave what were alleged to be $15,000 worth of baseball cards, $7,800 worth of silver, and $5,000 worth of jewelry in an unoccupied and unsecured home with a leak in the roof located in a remote area, which according to a Field Connections' vendor was causing water damage and mold. Similarly, Sgt. Rehkopf, upon joining the United States Marine Corps in 2012, removed almost everything from his bedroom except for his baseball cards – allegedly the most valuable item in the room – despite being married, and living in a multi-bedroom home on the Marine Corps base in Hawaii.

      Plaintiffs' only evidence regarding the existence and value of the items is from Eric Slater, who moved out of the home in January 2013, Lisa Rehkopf, who left the home at least as early as July 2014, but spent some time in Atlanta in 2014, and Lance Rehkopf, who left the home in 2012. Plaintiffs' stated fair market value for the personal property seems high and is not supported by any independent valuation analysis. In fact, in prior bankruptcy petitions filed by Lisa Rehkopf, she estimated the value of all of her personal property at $1,770.00, with household goods at $400.00, clothing at $50.00, jewelry at $20.00, and miscellaneous sports equipment at $50.00. At the time of the bankruptcy filing, she and her co-debtor were in possession of the wedding set, silverware, baseball cards, and clothing, which she now values at a combined $31,800. We also expect Altisource, Field Connections and Brian Green's testimony regarding the value of the

8

personal property to be significantly lower than Plaintiffs' allege. Moreover, many of the higher valued items cannot be identified in any of the before or after photographs of the inspections and clean out conducted by Altisource's vendors. We expect the owner of West End Properties, the Field Connections vendor, to testify that he has no recollection of seeing jewelry, silverware or baseball cards in what he removed from the basement in February 2015.

In the initial responses to discovery related to damages, Plaintiffs placed a monetary value on items they now maintain cannot be valued, e.g., Christmas decorations, family photograph albums and children's artwork, family recipes, military commendation letters and a painting by Eric Slater's mother. These items have purely sentimental or emotional value which is not recoverable. N.C.P.I. Civil 810.66 lists several factors to be considered by the fact finder in determining the "actual value" of a plaintiff's property, including, in relevant part, the original cost of the property, the age of the property, the condition of the property just before it was damaged, the uniqueness of the property, the cost of replacing the property, the opinion of the plaintiff as to its value, the opinion of any experts as to its value, and any other factors supported by the evidence. Id. N.C.P.I. Civil 810.66 also dictates that the fact finder must not consider "any fanciful, irrational or purely emotional value" that the specific property may have had. Id.

There is one decision in North Carolina upholding the application of an intrinsic value measure of damages, Freeman, Inc. v. Alderman Photo Co., 89 N.C. App. 73, 365 S.E.2d 183 (1988). In Freeman, Plaintiff lost hundreds of architectural drawings, work

9

papers, and surveys as a result of the defendant's negligent repairing of the building roof. The court allowed the jury to consider the evidence that many of the lost drawings were useless and did not warrant replacement. In Shera v. N.C. State University Veterinary Teaching Hospital, 723 S.E.2d 352, 357 (2012), the Court of Appeals noted that the Freeman decision "is the only decision in our State upholding the application of an actual or intrinsic value measure of damages, despite the availability of such measure in appropriate circumstances." The court further noted that "[t]he 'actual value' instruction in Freeman was applied to limit, rather than enhance, the plaintiff's recovery by preventing a windfall to the plaintiff in the form of compensation for useless property." Id. at 355. Intrinsic damages have never been allowed in a reported conversion case in this State and "[t]he current law in North Carolina is clear that ... the market value measure of damages applies... whether [the property destroyed is] sentient or not." Id. at 357. Cf. Blum v. Worley, 121 N.C. App. 166, 169, 465 S.E.2d 16, 19 (1995) (stating instructions on damage to "intrinsic value" of land are appropriate "in certain circumstances" where evidence supports such an instruction). Indeed, evidence that is "purely speculative or conjectural" or "too ephemeral," in addition to being purely sentimental as we have already noted, cannot support such an instruction. Id. at 170, 465 S.E.2d at 19.

Although there is an opinion with a "purely academic" discussion of whether "the sentimental value of property" may be recovered as compensation for a defendant's tortious act, the North Carolina Supreme Court's decision in Thomason v. Hackney, 159 N.C. 299, 303–05, 74 S.E. 1022, 1024–25 (1912), the case law has been consistent in

10

denying recovery for sentimental value of negligently lost or destroyed personal property. Cf. City of Kings Mountain v. Cline, 19 N.C. App. 9, 13, 198 S.E.2d 64, 67 (1973) ("[S]entimental value[ ] is not such value as will support a monetary compensation."). In this case, the testimony and evidence as to the value of the personal property will be speculative and conjectural, and based upon an emotional opinion of the worth of the personal property rather than on the fair market value of the personal property at the time of the alleged conversion. See, e.g., Blum v. Worley, 121 NC App 166, 170, 465 S.E.2d 16, 19 (1995) ("It is long- settled that damages will not be had where the evidence is purely speculative or conjectural.").

Finally, Plaintiffs seek to recover treble damages and punitive damages. Plaintiffs cannot recover both and must choose between treble damages or punitive damages. Defendants do not view this case as warranting either award.

**D.     MOTION TO BIFURCATE TRIAL**

Defendants have moved to bifurcate the compensatory and punitive damages phase of the trial to avoid prejudice to Defendants. This motion was filed pursuant to N. C. GEN. STAT. § 1D-30, which requires bifurcation of the issues of liability for punitive damages and the amount of punitive damages from other issues, and Rule 42 of the Federal Rules of Civil Procedure, which allows the court order separate trials on one or more separate issues to avoid prejudice.

Respectfully submitted, this the 17th day of January, 2017.

        s/Michael C. Griffin
        Mark Wierman [N.C. Bar No. 37143]
        Michael C. Griffin [N.C. Bar No. 31947]
        Bradley Arant Boult Cummings LLP
        Hearst Tower
        214 North Tryon Street, Suite 3700
        Charlotte, North Carolina 28202
        Telephone: (704) 338-6000
        Facsimile: (704) 338-6091
        mwierman@babc.com
        mgriffin@babc.com

        *Attorneys for Defendants Ocwen Loan Servicing, LLC, Altisource Solutions, Inc. and Wells Fargo Bank N.A. As Trustee For Option One Mortgage Loan Trust 2007-4, Asset-Backed Certificates, Series 2007-4*

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing filed the foregoing was filed with the Clerk of Court using the CM/ECF system for the Middle District of North Carolina, which sent electronic notice of the filing to all counsel of record, including:

James White
PARRY | TYNDALL | WHITE
100 Europa Drive, Suite 401
Chapel Hill, NC 27517

*Attorneys for Plaintiffs Lisa Rehkopf, Lance Rehkopf, and Eric Slater*

Stephanie Gaston Poley
Joseph S. Johnston
Cranfill Sumner & Hartzog LLP
PO Box 27808 Raleigh, NC 27808
spoley@cshlaw.com
jjohnston@cshlaw.com

*Attorneys for Field Connections LLC*

Kenneth B. Rotenstreich
Teague Rotenstreich Stanaland Fox & Holt, P.L.L.C.
Post Office Box 1898
Greensboro, NC 27402-1898
kbr@trslaw.com

*Co-Counsel for Ocwen Loan Servicing, Altisource Solutions, Inc. and Wells Fargo Bank N.A*

                s/Michael C. Griffin
                Michael C. Griffin